The next case on the calendar is Sacerdote v. Kammock. Good morning, your honors. May it please the court. Sean Sawyers on behalf of the Plaintiff's Appellants. The District Court's dismissal of Kammock-Lorette advisors should be reversed because Kammock and New York University are independent parties, and the mere fact that Kammock and NYU are counterparties to a contract for a fiduciary investment device does not establish privity between Kammock and NYU. The District Court actually entered two separate orders dismissing plaintiff's claims against Kammock on claim preclusion or duplicative litigation grounds. Both of those orders were erroneous. First, before Kammock even filed a motion to dismiss, and despite acknowledging that the two counts alleged against Kammock were new claims that were not raised in the first action against NYU, the District Court dismissed the claims because it found the plaintiff should have raised them in the first case. You concede that there are many issues on which there may be issue preclusion from the first case and the second, but you're saying that there isn't and that is whether Kammock was giving bad advice as against the management matter. Is that it? Well, as to issue preclusion, that hasn't been briefed yet. It's a potential defense that Kammock could raise. Well, the contract as understood under ERISA means that both Kammock and NYU had certain duties, and presumably much of that will have been tried out in the first case. Your claim is that Kammock had other duties apart from that that didn't have to be included in the first case and are separate. Correct. Kammock and NYU had independent duties. If Kammock gave imprudent advice, that is not correct. May have been wrong with the first suit, including issues of sanctions that are not yet decided, and so on, is all irrelevant to the issue that we have before us. Correct. Kammock, the District Court dismissed Kammock sua sponte before even a court didn't like the behavior of your client, and so it got mad and it dismissed it, but that doesn't make it right or wrong. I mean, that's a different issue. That's our position, yes. That the fact that there was a denial of leave to amend on a procedural ground of timeliness in the first case, that doesn't prevent another valid procedural route, as the court held in the Northern Assurance opinion, by filing a second case against a separate party like Kammock. You don't have to bring all the defendants in in one case. That's right. If it's an independent party, there's no obligation to join them all because there's a separate cause of action. The only exception to that would be if there was privity. Privity, exactly. You're saying there is no privity here, at least it seems to me, because one question is whether NYU was prudent in hiring Kammock, as opposed to prudent with respect to the investments, and that Kammock is responsible for the investments, whether they were acting prudently with respect to the investments. So those are two different issues. They are two different issues. So they don't share a commonality of interests. Exactly. If we agree with you that the district court may have erred in concluding that the suit was duplicative and dismissing it at that stage, there would have to be an inquiry to claim and issue preclusion if this were to go back down. I agree. That Kammock would, as it footnote in its brief, it would seek to raise claim and issue preclusion defenses, and we would dispute that the elements of those are met, but that would be the issue on remand. Of course, you could have sued Kammock in the first suit in the first place. Well, we did not, the plaintiffs did not have the information about the flaws in Kammock's advice until after the deadline for amending the That's right. There was no obligation to do so if the parties are separate. So the cases that the district court cited suggesting that there was privity involved a vicarious liability type of relationship where the employer was sued in one case and its employees were sued in another case where there was some sort of agent principle liability, and there's nothing like that here. The categories of cases that, in which a non-party may be subject to preclusion, the Supreme Court talks about six categories in the Taylor v. Sturgill opinion at 553 U.S. at 893-95. And none of those categories are present. They generally consist of situations where the non-party actually controlled the defense of the first case, and there's no evidence of that here. And NYU stated in its briefing in the second case that it does not represent Kammock and it takes no position on Kammock's It defines that just a contractual relationship establishes privity and there's no sort of a vicarious liability under ERISA between Kammock and NYU. So the plaintiff's position is that they should be considered independent parties for purposes of claim preclusion. If plaintiffs had won the first case, they could not have collected the judgment from Kammock, so Kammock shouldn't be able to claim the benefit of claim preclusion. District Court, it's the only facts that it cited supporting the privity finding were the, it cited four allegations out of the 349 paragraph complaint. The fact that there was a contract, the fact that there were co-fiduciaries, and then there was an allegation that Kammock had enabled or participated in NYU's breaches of fiduciary duty. But that was limited to only one of the two counts against Kammock. And even if there was, if there were privity for that count, there's some advice that had, that were not dependent on enabling NYU or participating in a breach with NYU. I'll reserve the balance of my time. Thank you. Good morning. May it please the court. Charles Dyke of Nixon Peabody on behalf of Kammock. Let me start by saying that the appropriate standard of review is abuse of discretion. And that's the question is whether or not Judge Forrest abused her discretion in finding an identity of interest between NYU and Kammock. If it is an issue of law on whoever that is, that it doesn't really matter. Because there is an abuse of discretion if the wrong law is applied. We do not disagree with that whatsoever. We certainly agree. And that raises the question of, well, what are the principles, the legal principles that apply? They focus solely on cases in which there is an employer-employee relationship, where the question is whether or not the employee who is subsequently sued in the second suit adequately has his or her interest. It doesn't matter whether they focus on. The question is, is this a separate suit for a separate breach of duty? Is there, the fact that there is a commonality by contract and probably even apart from contract under ERISA on the question of whether this was NYU and your client behaved in a certain way, doesn't raise the question of whether your client gave bad advice. That's a separate question, isn't it? Well, we believe that, I guess that raises two issues, Your Honor. And we believe that there is, that the second lawsuit is purely a repackaging of the claims in the first lawsuit. But how is it if in the first suit it's a question of management and in the second suit it's a question of bad advice, which NYU couldn't possibly have given? That isn't their business. I don't think that NYU is in the business of giving management advice. Oh, they're certainly not in the business of giving bad advice, Your Honor. But that issue was deeply embedded in the first lawsuit. And in fact, if you go back and look at the trial record, which we have the benefit of having, you can see that that fundamental issue was tried by them. Camac was a major witness at the trial and that was absolutely an embedded issue in the case, whether or not the NYU fiduciaries were, breached their duties in relying on supposedly bad advice from Camac. What do you mean by embedded when Camac was not a party? Camac certainly could have been a party. I mean, it could be relevant in the sense that if NYU was defending by saying we only did what Camac advised us to and we had every reason to believe him, then some of the issues would have come up. But it wouldn't have come up in the sense of Camac defending himself and saying I didn't do anything wrong. Well, it's embedded in the sense that there can be no liability for either entity, the NYU fiduciaries or Camac, unless the underlying liability issues that were raised in the first lawsuit against NYU resulted in any sort of liability. And the plaintiffs had any number of arguments and theories for why... You're developing a privity rule that turns on the outcome of the first suit, as opposed to looking at the interests that would be at play and whether those interests were identical. And here it seems to me the interests are different because NYU has to defend against hiring, it seems to me, Camac, which gave bad advice. Did they act reasonably and prudently in hiring them, as opposed to whether there was prudence in the analysis of the accounts and the decisions that were... the investment decisions that were made. It would be absolutely against NYU's interest to point the finger at Camac because under ERISA, NYU can't escape liability by simply relying on Camac's advice. That issue was deeply embedded in the first case and in fact came up during trial. There was an identity of interest between the two parties, Your Honor, to... They were co-trustees, weren't they, or co-fiduciaries? They were both ERISA fiduciaries, that is correct. So on that basis, of course, that makes sense. Hypothetically, though, if they weren't, then would they still be held by virtue of the fact that if they had acted prudently in hiring ERISA... hiring Camac? I'm sorry, I'm not sure I followed that question. NYU, you mean? They weren't co-fiduciaries, but NYU simply... and therefore were making independent decisions, but NYU was simply responsible for finding somebody who would advise them. And they did all sorts of diligence and they came up with what they believed was absolutely the right person for that job. There was no negligence whatsoever or problem. Then wouldn't they have a defense? Under ERISA, the plaintiffs were suing for damages under ERISA. The only way to get those damages is to assign liability to prove a breach of fiduciary duty by the NYU fiduciaries. And is the NYU fiduciary breaching his duty when he acts with the utmost reasonableness in hiring an advisor? Absolutely not, Your Honor. So there's a difference. But it may be that NYU has no particular interest in attacking your client, or they may, we don't know. But that is still a separate question of whether NYU or your client in his role as a co-fiduciary did something wrong, or whether your client did something wrong in a separate role, and that is as advisor. Even if CAMAC did something... NYU doesn't care about that. Even if CAMAC did something wrong, there can be no liability for either CAMAC or NYU unless NYU did something wrong, because CAMAC didn't have control over the plan, made the ultimate investment decisions, and so forth. Now you're saying that somehow NYU broke the chain of causation, but give me a break. An advisor who gives advice to a client who then follows that advice, perhaps negligently, doesn't let the advisor off? There's no tort case in the world that would say anything like that automatically. I mean, it may be that in the development of the case it is, but in terms of whether there is a separate suit against the advisor, because that advice might have been taken, that certainly doesn't automatically break the chain of causation. Your Honor, I have raised these points in an effort to show that there's an identity of interest in the initial lawsuit to defeat those claims. Whether or not, at the end of the day, if there ultimately is some form of liability that attaches, and whether or not one or the other of the two co-fiduciaries has a claim against the other isn't determinative of the question of whether their interests are the same in the lawsuit or whether they diverge. If their interests do not diverge in the lawsuit, then... So your position is that before this lawsuit occurred, when the district court was looking at this and making the decision that it was duplicative, that NYU had no conceivable interest. There was no world in which NYU would want to point the finger at your client and say it was his fault. I don't think that's the standard under the cases, Your Honor. I think the standard is whether or not their interests are substantially identical or substantially the same. And if you look at the record items we put before the court in our briefing, there's plenty in the record to establish that they had identical interests in defeating those claims and not in pointing the fingers at each other. Well, they have identical interests in defeating claims, but it doesn't mean that they have an identical interest in defeating every claim that can be made against CAMAC. They have an identical interest in defeating some claims, and that's why many of the things in this suit may ultimately be covered by issue preclusion. And I would argue, Your Honor, that CAMAC and NYU both had the same interest in defeating the claims, even NYU defeating the claim that CAMAC did something wrong, because NYU relied on CAMAC's advice. They are joined together in these, that's how the co-fiduciary relationships work in the real world. In ERISA land, you have committees, you know, at these universities who run the plans, and they hire outside advisors, and they work together to run these plans. And of course, if NYU can show that CAMAC did not give bad advice, then NYU wins. But you also have a situation in which CAMAC gives bad advice, which NYU reasonably relies on, and therefore NYU is not liable, but CAMAC is, and that's a separate question. Isn't that a separate question? I do believe that is a separate question. I don't know that they can get to, this goes back to the identity of interest, I don't know that you can get to liability for NYU in that circumstances, or for against NYU. There's no liability against CAMAC, period. Under ERISA, because there's no harm to the plan. If CAMAC gives bad advice, which NYU reasonably buys, isn't there a suit against CAMAC for the bad advice that CAMAC gives, even though NYU is not liable as a co-fiduciary under ERISA? But CAMAC is liable for giving bad advice. Why isn't that a standard suit, which the previous suit simply didn't deal with? Yes, Your Honor. I do think that in the abstract that is true. I don't think under the circumstances of this case that there is a route alleged in the complaint that could lead to liability against CAMAC. My difficulty is, at the time the district court was making this determination, there was very little before the court, she didn't have the benefit of the trial record, and maybe you still have some arguments about claim preclusion, but shouldn't those be addressed on the basis of the full record that exists now? We do agree that the issue of claim preclusion is separate from the issue of whether or not the second complaint is duplicative of the first, insofar as it names CAMAC. And we reserve those for later, for sure. But we do think there's enough in the record to support the judge's finding. You have the answer in which NYU absolutely committed itself to the position that the decisions that actually occurred were objectively prudent. It had nothing to do with CAMAC's advice, just that the investments that were made and the decisions that were made were objectively prudent. And a collection of other decisions that we pay attention to in the papers that lock them into that position. Thank you, Your Honor. As to the point of whether NYU pointed the finger at CAMAC during the first trial, NYU didn't argue that CAMAC's advice was imprudent, but it did argue that if CAMAC's advice was imprudent, that NYU itself shouldn't be held liable because there were no red flags or any evidence that NYU knowingly participated in CAMAC's breach. And that was a letter that was filed in the middle of trial, document number 302 at page 4. There was a comment the district court made that the evidence could be viewed one of two ways One is that NYU didn't, the NYU, the committee members didn't sufficiently investigate what CAMAC recommended or it could be viewed as CAMAC making appropriate recommendations. And the court made a comment that it viewed it as such, that the recommendations were appropriate. However, the plaintiff's position on any issue preclusion based on that would be that it wasn't necessary to the outcome because the primary issue was the prudence of the conduct of the NYU committee and CAMAC's own conduct not being at issue in the case. As to whether CAMAC can be held liable if NYU itself didn't breach a duty, we dispute CAMAC's position on that. Don't believe there's any authority that says that an investment advisor is immunized unless the plan sponsor or employer also breached a duty. And the answer, NYU did also allege a defense that any losses to the plan were caused by entities for which NYU was not responsible which would cover a party such as CAMAC. If the court doesn't have any other questions, plaintiffs would ask that the dismissal of the claims against CAMAC be reversed. Thank you. Thank you both. We'll take the matter under advisement.